## FARMERS MUTUAL FIRE INS CO v VIRGINIAN JOINT STOCK LAND BANK

Ohio Appeals, 2nd Dist, Darke Co

No 456.   Decided Jan 8, 1936

Meeker & Gaskill, Greenville, for plaintiff in error.

Billingsley & Manix, Greenville, for defendant in error.

## OPINION

By BARNES, PJ.

It is the claim of the insurance company that in compliance with §10 it duly mailed a notice of assessment in the first instance to Mrs. Mahan as per stipulation in its letter of April 4th that it would so do. Mrs. Mahan filed no pleading in the lower court nor was she called as a witness. It therefore follows that the evidence presented of notice of mailing to Mrs. Mahan stands uncontradicted. The insurance company further claims that on January 17, 1933, it notified the Land Bank that the assessment due December 15th, 1932, had not been paid and requested remittance within ten days. The mortgage clause attached to the insurance policy contained the following provision:

"This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for 10 days after notice to the mortgagee (or trustee) of such cancellation and shall then cease and this company shall have the right, on like notice to cancel this agreement."

The amount of the assessment was $6.10 and same has never been paid. It is the claim of the Land Bank that it at no time received any notice of non-payment, although it was ready at all times to keep the insurance policy effective had it been advised that Mrs. Mahan was in default. The insurance policy contained a provision that if the assessment was not paid within a stipulated period after notice such nonpayment would automatically work a suspension and there would be no further liability under the policy from the date of such suspension.

The entire controversy revolves around the question of mailing and receipt of notice from the insurance company to the Land Bank after Mrs. Mahan had defaulted in payment. It will be observed that §10, above quoted, contains the following provision "the mailing of the notices of assessment shall be a fulfillment of the duties of the association in the notification of the members of their assessment."

This contractual provision modifies the rule of presumption arising where communications are transmitted by mail. The rule is well recognized that where a communication is regularly addressed and placed in the Post Office with proper postage a presumption arises that the same will be delivered in due course. This, however, is a rebuttable presumption and in the event the party to whom it is claimed the letter has been transmitted denies receiving it, there then arises the question of fact as to whether or not the communication was received.

In the instant case all the insurance company is required to do is to show that notice properly addressed and stamped was duly mailed. The language of this §10 was under consideration by this court in January 1927 and in the unreported case of Washington v Farmers Mutual Fire Insurance Company, Darke County, Judges Allread, Ferneding and Frankle concurring, it was held that by reason of §10 of the by-laws, the company was only bound to mail the notice of assessment.

Applying this principle, we need only look to the question as to whether or not the evidence adequately supports the claim of the insurance company that it caused notice to be duly mailed to the Land Bank.

We may start with the observation that it would only be natural that with the volume of business handled by the two companies, its officers' and employees would not likely have an independent recollection on the question of mailing or receiving notices. Such concerns must have controlling systems and methods by which check is kept on the necessary routine of their business requirements. The fire loss for which the Land Bank brought its action in the instant case occurred in 1935, more than two years after the claimed suspension of liability had arisen.

On this controverted question the insurance company presents evidence that proper notice was duly mailed to the Land Bank and on the other hand the Land Bank presents evidence that no such notice was ever received. It was the holding of the trial court that the burden was with the Land Company, based primarily upon the reasoning that the Land Company did receive notices in other instances and gave immediate attention to the defaulted payments; that this policy of the Land Bank being established the court concluded that the probabilities were that the notice was improperly mailed and for that reason not received.

It is our view that the trial court over-

242

looked the claim and contention of the insurance company that its notice to the Land Bank of some 8 or 9 defaults of mortgagors, including Mrs. Mahan, were all sent out in one notice and mailed in one envelope. This notice, Defendant's Exhibit 1, is the form in which defendant claims to have sent the notice to the Land Bank. This notice or whatever notice or notices were sent to the Land Bank on or about January 17, 1933 should be in the files of the Land Bank at their offices in Charleston, West Va. This documentary evidence will very positively determine whether or not the notice was given to the Land Bank collectively as illustrated in Defendant's Exhibit 1 or by separate document covering each delinquent mortgagor. That the Land Bank did receive notices of delinquent assessment payments by a number of mortgagors is evidenced by Defendant's Exhibits attached to the bill of exceptions, but not numbered. These exhibits consist of seven separate letters, four of which are dated January 19th and three, January 20th, 1933. Each of these letters is addressed to the Farmers Mutual Fire Insurance Co., and signed by the Virginian Joint Stock Land Bank and was produced in evidence from the files of the insurance company. Each letter acknowledged receipt of notice and each has the separate identification as follows:

Policy No. 20525, R. P. Stowe, Assessment $9.80.

Policy No. 19765, Sherman C. Creager, Assessment $15.30.

Policy No. 21345, Andrew Hittle, Assessment $5.35.

Policy No. 22768, Lucy L. Howard, Assessment $8.40.

Policy No. 22611, Clarence A. Gilmer, Assessment $14.00.

Policy No. 20645, V. C. Chenowith, Assessment $19.70.

Policy No. 21849, Ira Warrick, Assessment $7.45.

No reply letter was received as to policy No. 26748, Alice Mahan, $6.10. However, there was introduced in evidence Exhibit 2, being letter dated March 30, 1933, from the Land Bank to the insurance company, In re Policy No. 26748, assessment $2.45. This letter refers to a cyclone policy which was separate from the fire policy No. 20383, Alice Mahan. The insurance company presents evidence that notices as to delinquencies on cyclone policies were mailed out in separate lists on or about the same date as the assessment delinquencies on fire policies. In

this letter of March 30, 1933, the Land Bank states that it is unable to find this loan in their files and ask for further identification through previous correspondence, etc. Defendant's Exhibit 3 presents significant evidence and we think standing unexplained, supports the theory of notice on the part of the insurance company and turns the scale in their favor on the question of preponderance of the evidence. This letter is dated March 30, 1933, addressed to The Farmers Mutual Insurance Company and signed by the Virginian Joint Stock Land Bank. The subject of the letter is identified at its heading by the following typed wording:

"RE: LOAN—Policy 22768

LUCY L. HOWARD—ASSESS-

MENT $6.10."

The very important question presents itself to us as to where the Land Bank got the figures $6.10 except from a notice from the insurance company. So far as presented to us the amount delinquent on the Lucy L. Howard assessment was $8.40. In none of the other delinquencies do we find the figures $6.10. This was the amount of Mrs. Mahan's delinquency and none others. This letter, Exhibit 3, is dated the same as defendant's Exhibit 2 and in each instance is seeking identification of the loan.

The Loan Company in their letter of January 20, 1933, had already replied to the delinquency on Policy No. 22768, Lucy L. Howard, $8.40. This error may be explained in that the letter, Exhibit 3, may have been intended to inquire about the Mahan assessment of $6.10. In any event, under the state of the record, we think the evidence preponderates in favor of the insurance company, particularly in view of the announced law by this court in its unreported opinion rendered in 1927 to the effect that under the contract notice of assessment is shown by mere mailing thereof.

The evidence presented by the insurance company relative to the mailing of notice coupled with the further corroborative evidence to which we have referred compels us to reverse the trial court on the question of the weight of the evidence. The cause will be remanded for new trial. Exceptions will be allowed to defendant in error, Entry may be drawn according to this opinion.

HORNBECK and BODEY, JJ, concur.